**Johnny GREEN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 04–93–00131–CR.**

Court of Appeals of Texas,
San Antonio.

March 1, 1995.

⚷1159.2(7)

---

Nancy B. Barohn, San Antonio, for appellant,

Steven C. Hilbig, Crim. Dist. Atty., Edward F. Shaughnessy, III, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Before RICKHOFF, HARDBERGER and DUNCAN, JJ.

## OPINION

HARDBERGER, Justice.

We withdraw our opinion of February 28, 1995 and substitute the following opinion. It does not change the holding but deals with a point of error that was not addressed in the earlier opinion.

This is an ineffectiveness of counsel case. A defendant has a difficult burden in seeking a reversal on these grounds. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Nevertheless there are Constitutional guarantees that cannot be abrogated. There are occasionally cases where even minimal standards are not reached, and the conviction must be reversed. We hold this to be one of those cases. We reverse and remand.

### Facts

Johnny Green bought a ring from Linz Jewelers in San Antonio. The ring cost $1,621.04. Green gave a check in payment. The sales clerk tried to verify the check with Telecheck, but they refused to do so. The store manager then became involved, and eventually agreed to accept the check after having been shown several deposit slips of Green's which indicated that he had enough money in the bank to cover the check. He didn't though and the check bounced. Several attempts were made to get Green to cover the check or to return the ring. He did neither. Eventually Green was indicted for the offense of theft having taken the ring with intent to deprive the owner. The jury was instructed that "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." Green's defense was that he thought he had the money in the bank to cover the check. The jury convicted him, and the trial court sentenced him to ten years' confinement.

### Ineffectiveness of Counsel

Green's appellate counsel charges that Green's trial counsel committed the following errors and omissions:

1. Failed to file necessary pretrial motions;

2. Failed to understand the State's theory of the case;

3. Failed to object to the introduction of prejudicial extraneous offense evidence offered by the State on the issue of identification;

4. Failed to investigate Mr. Green's prior criminal record, before calling him as a witness in the case;

5. Needlessly opened the door to irrelevant and prejudicial matters previously excluded by the trial court;

6. Failed to request a jury charge on the statutory defense of mistake of fact;

7. Failed to request the court to charge the jury on the definitions of "deception" under Sec. 31.01—the only theory on which this case was tried, or to preserve reversible error by objecting to the charge without the definition;

8. Failed to object to the omission of the definition of "knowingly" from the charge;

9. Failed to preserve error, or to ameliorate harm, in response to the prosecutor's improper jury argument; and

10. Failed to object to the prosecutor's jury argument which misstated the law on the issue of intent, diminishing its burden of proof.

The State does not deny any of these omissions, but point to the heavy burden placed by *Strickland,* and say that none of the errors reach Constitutional proportions. They also cite numerous opinions, including many from this court, where "ineffective counsel" appeals have been unsuccessful. This is not surprising considering the difficulty of proving ineffectiveness. However, the number of unsuccessful appeals in the past do not control this case as each case must be examined on its own merits.

### The Law

The leading case regarding ineffectiveness of counsel is *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Strickland* standard of review of representation was adopted by Texas courts in *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App.1986). The underpinning of the effectiveness of counsel right is the Sixth Amendment which guarantees a fair trial. The Amendment says among other things: "In all criminal prosecutions, the accused shall ... have the Assistance of Counsel for his defense." U.S. CONST. amend. XI.

Subsequent court decisions have held that "the right to counsel" means "the right to effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 1449, n. 14, 25 L.Ed.2d 763 (1970). "That a person who happens to be a lawyer is present at trial alongside the accused,

however, is not enough to satisfy the constitutional command." *Strickland,* 466 U.S. at 684, 104 S.Ct. at 2063. "Counsel ... can ... deprive a defendant of the right to effective assistance, simply by failing to render adequate legal assistance." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064. Ultimately the question is one of fundamental fairness of the proceeding and whether "the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2069.

The standard of review set out in *Strickland* has two components ("prongs," as lawyers insist on calling them). They are:

1. The defendant must show that counsel's performance was deficient.

2. The defendant must show that the deficient performance prejudiced the defense to the extent that the defendant is deprived of a fair trial. *See Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064.

Because trial tactics are an uncertain art, it is frequently difficult to recognize an unconscious error from conscious strategy. Attorney skills are vastly different, and so is the effectiveness of counsel. Most every lawyer does a better—and worse—job than some other lawyer. Also even the best, and most well prepared lawyers sometimes make mistakes. If appellate courts demanded trial perfection not many convictions would be sustained. Mercifully lawyers are not expected to be perfect. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065. Because of the inherent difficulties in making the evaluation there is a presumption that an attorney's actions are within the range of reasonable professional assistance. For all the above reasons most appeals based on ineffectiveness of counsel are doomed to failure. *Cotten v. State,* 893 S.W.2d 200 (Tex.App.—Ft. Worth 1995).

Most does not mean all though. "Ineffectiveness of counsel" is not a specter. It can exist. It's just hard to prove reversible error. It can be shown when the trial counsel's

errors are so fundamental with such far-reaching implications that no one could excuse them as "trial strategy" because no reasonable lawyer would do them. The cumulative effect of enough of these errors can simply undermine the concept of a fair trial and bring the weight of Constitutional guarantees on the trial results. Both the State as well as defense attorneys have an obligation in this regard. Because there were multiple, serious instances of ineffectiveness of counsel in this trial, this court feels it must reverse and remand the case.

### Mistake of Fact Defense

■ One element in Green's indictment for theft is there was an *intent* to deprive the owner of the ring of his property without his consent. Obviously, the owner did not consent if his consent was induced by deception. "Deception" includes "creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true." TEX. PENAL CODE ANN. § 31.01(2)(A).

Thus the intent of Green and what he knew at the time he was writing the check and taking possession of the ring was the central issue of the case. Green's defense was that he actually thought he had the money in the bank to cover the check. He had some probative evidence to back him up—he had deposit slips to the bank that exceeded the face value of the check. In summary, his defense was mistake of fact that negated the kind of culpability required for commission of the offense charged. There was conflicting evidence by the State. The State maintained Green knew very well he didn't have the money to cover the check and that his intent was to get possession of the ring without the inconvenience of paying for it. Thus there is a jury issue. The defendant is entitled to a charge defining the defense of a mistake of fact so that the jury can apply the law to the facts. Green didn't get it. His attorney didn't ask for it. For the jury not to be given the only law raised by his defense that would have favored defendant's theory of the case is catastrophic. Had it been requested it would no doubt

have been given. It would have been reversible error not to have done so. *Beggs v. State*, 597 S.W.2d 375, 380 (Tex.Crim.App. 1980). No extension of "trial strategy" can explain such a failure. It was the fundamental law of the defense.

*Vasquez v. State*, 830 S.W.2d 948 (Tex. Crim.App.1992) is helpful and on point. The defense in that case was "necessity" (for the offense of being in possession of a firearm by a felon). However, the defendant's trial counsel did not request a special instruction on necessity, nor did he object to the court's charge. There was a conviction and an appeal on ineffectiveness of counsel. The Court of Criminal Appeals agreed that this was fatal ineffectiveness and reversed.

> Since the necessity defense is specifically recognized by the legislature in the Penal Code, we find that counsel's performance did not satisfy the objective standard of reasonableness under prevailing professional norms ...

> Counsel should have recognized the appellant's testimony was sufficient to raise the defense, and that appellant had nothing to lose by requesting a defensive instruction. Without giving the jury an opportunity to consider a defense, conviction was ... a foregone conclusion....

> That in itself undermines our confidence in the conviction sufficiently to convince us that the result of the trial might have been different had the instruction been requested and given.

*Vasquez*, 830 S.W.2d at 951 (citations omitted).

The Court concluded in reversing the conviction that "Counsel's performance in not seeking the instruction was clearly deficient." *Vasquez*, 830 S.W.2d at 951.

The "mistake of fact" defense, like the necessity defense, is found in the penal code. Texas Penal Code § 8.02 (Vernon 1974) states that mistake of fact is a defense; therefore, a reasonable doubt on the issue requires that the appellant be acquitted. TEX. PENAL CODE ANN. § 2.03(d). A common charge in mistake of fact cases include language that states:

It is a defense to this prosecution if the defendant, through mistake, formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense charged. *See Johnson v. State,* 734 S.W.2d 199 (Tex.App.—Houston [1st Dist] 1987).

This standard language must then be specifically applied to the facts of the particular case. Not to do so is reversible error. So not only is it error not to give the instruction, but it is error not to apply it to the facts.

*Beggs v. State,* 597 S.W.2d 375 (Tex.Crim. App.1980) is a case in point. In an injury to a child case the defense was mistake of fact (didn't know the bath was scalding hot when the child was put into it). The conviction was reversed because the trial court failed to distinctly apply the law of mistake of fact to the facts of the case before it.

> The failure of the charge to apply the law to the facts is calculated to injure the rights of the defendant (V.A.C.C.P., Article 36.19) to a trial by jury; it deprives him of a neutral and unbiased application of the law, leaving that function to the partisan advocacy of opposing counsel in argument.

*Beggs v. State,* 597 S.W.2d at 379. "We readily recognize that if evidence admitted before the jury at a trial raises a defensive issue the defendant is entitled to have a requested instruction concerning this defense submitted to the jury in the court's charge." *Willis v. State,* 790 S.W.2d 307, 315 (Tex. Crim.App.1990).

### Other Errors of Counsel

■ While we believe that the failure of defense counsel to ask for the mistake of fact instruction, and have it applied to the law of this case demands reversal of the conviction, the many other errors cited above and not contested by the State add to the analysis of an undermining of confidence in the conviction. Failure to object to the omission of the definition of "knowingly" from the charge is a serious omission. "Knowingly" goes to Green's state of mind, and whether he had a criminal intent. There was a failure to file any of the standard discovery motions. Counsel allowed the State to introduce

Green's prior mug shots which showed earlier arrests unconnected with this offense without even objecting to them, and when identity was not really at issue. Green never denied that he wrote the check: his defense was that he did it, but thought he had enough money in the bank to cover it. No possible "trial strategy" could explain why defense counsel would want his client's extraneous offenses placed before the jury. Nor does this court see any reason defense counsel would put bank records into evidence that showed Green was in a habit of seriously overdrawing his accounts when the trial court had already prevented the State from putting them into evidence. These records had the tendency to show that Green had knowledge and intent—the very reason the State wanted to put them into evidence.

Finally, there is no easy explanation, other than ineffectiveness of counsel, that would explain counsel putting his client on the stand without ever making inquiry as to his previous convictions. This is especially true when there *are* previous convictions. The law goes to great lengths to insulate a defendant's extraneous behavior from the case being tried at the guilt or innocence stage. For counsel to throw away these protections without consideration of the consequences does not meet reasonable standards of attorney behavior.

We recognize that not every shortcoming of defense counsel in this case would justify reversal because of ineffectiveness of counsel. However, cumulatively, the errors totally undermine confidence in this conviction and violate the Sixth Amendment Constitutional guarantees of effective counsel.

### Insufficiency of the Evidence

In his remaining point of error, Green contends that an acquittal must be ordered as the evidence in support of his conviction is insufficient as a matter of law. We cannot agree with this point, and overrule it.

■ The standard of review of a legal sufficiency point is well defined. In reviewing the sufficiency of the evidence, this court must determine whether, considering the evidence in the light most favorable to the

verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Little v. State,* 758 S.W.2d 551, 562 (Tex.Crim.App.), *cert. denied,* 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988). In assessing the sufficiency of the evidence to support a conviction, the reviewing court must consider all of the evidence which the jury was permitted, rightly or wrongly, to consider. *Johnson v. State,* 871 S.W.2d 183, 186 (Tex.Crim.App. 1993); *Rodriguez v. State,* 819 S.W.2d 871, 872 (Tex.Crim.App.1991); *Deason v. State,* 786 S.W.2d 711, 716 (Tex.Crim.App.1990); *Thomas v. State,* 753 S.W.2d 688, 695 (Tex. Crim.App.1988); *Beltran v. State,* 728 S.W.2d 382, 389 (Tex.Crim.App.1987). If a portion of the evidence was wrongly admitted, the defendant may complain on appeal of such error. *Thomas v. State,* 753 S.W.2d at 695.

■ The indictment and the charge to the jury are in harmony. Green is accused, and was convicted, of depriving the owner of the ring, Elias Coronado, of his ring without his consent. There is no question that Green got the ring, and there is no question that Coronado expected to be paid for the ring and wasn't. The jury also heard evidence that Green was notified that the check had bounced and that Green had promised to take care of it. They also heard that Green never covered the check, and never returned the ring. Coronado's consent for Green to own the ring was premised on his belief he was getting paid for the ring. Consent is not legally "effective" if it is "induced by deception." Tex. Penal Code Ann. § 31.03(4)(A) (Vernon 1989). There was probative evidence, if believed, that would support a jury's finding that Coronado's consent was not effective because it was induced by the deception of Green, and that therefore Green was guilty as charged.

### Holding

Our findings are that Green's conviction is sufficiently supported by the evidence, but that there was ineffectiveness of counsel. We reverse and remand.